# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

BEVERLY JORNIGAN, DWIGHT WARD,
and JON MORAN,

       Plaintiffs,

vs.                                   No. CIV 03-0813 JB/ACT

NEW MEXICO MUTUAL CASUALTY
COMPANY, and WARREN SMALLEY,
JOHNNY SUAREZ, PAUL CANNIZARRO,
DEBORAH PAYNE, KAREN ALARID,
RAYMOND PEROVICH, TED KNIGHT,
BILL GARCIA, FABIAN CHAVEZ,
CHARLES DUKE COLKETT, RON
MOSHEL, BRIAN STOKES, NESTOR
ROMERO, and ERIC SERNA, in their
individual capacities,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the NMMCC Defendants' Second Rule 12(B)(6) Motion to Dismiss, filed May 26, 2004 (Doc. 97). The primary issue is whether the Defendant New Mexico Mutual Casualty Company ("NMMCC") and Defendants Johnny Suarez, Paul Cannizarro, Deborah Payne, Karen Alarid, Raymond Perovich, Ted Knight, Bill Garcia, Fabian Chavez, Charles Duke Colkett, Ron Moshel, and Brian Stokes (the "Director Defendants")(collectively with NMMCC, the "NMMCC Defendants") are entitled to the dismissal of Counts II, III, V, VII, and VIII of the Plaintiffs' Complaint on the ground that those claims fail to state a claim upon which relief may be granted. With respect to those claims, the NMMCC Defendants raise several arguments, including Eleventh Amendment immunity, qualified immunity,

sovereign immunity from unwritten contracts, and immunity under the New Mexico Tort Claims Act. Because the Court finds that NMMCC is not entitled to Eleventh Amendment immunity, that the Director Defendants are not entitled to qualified immunity, and that NMMCC is not a governmental entity under state law for purposes of either the statute governing contracts or the New Mexico Tort Claims Act, the Court will deny the motion to dismiss.

## PROCEDURAL BACKGROUND

The NMMCC Defendants filed their first motion to dismiss on November 26, 2003 (Doc. 21). At the hearing on that motion, held on February 4, 2004, the Court orally pronounced a ruling. On April 15, 2004, the Court held a telephonic hearing, during which it informed the parties that it had reconsidered a portion of its earlier oral ruling. On April 19, 2004, the Court issued a Memorandum Opinion and Amended Order memorializing its ruling. See Memorandum Opinion and Amended Order, filed April 19, 2004 (Doc. 78)("April 19, 2004 Memorandum Opinion"). In that opinion, the Court made two findings that lead to the current motion: (i) that NMMCC is a governmental entity for purposes of 42 U.S.C. § 1983; and (ii) that the Director Defendants are state actors for purposes of 42 U.S.C. § 1983.

The Court based its conclusion regarding NMMCC on the analysis that the Supreme Court of the United States set forth in Lebron v. National Railroad Passenger Corp., 513 U.S. 374 (1995), in which the Supreme Court held Amtrak to be a governmental entity for purposes of a claim brought under the First Amendment. See April 19, 2004 Memorandum Opinion at 28-31. Alternatively, the Court found that NMMCC is a state actor under the entwinement, joint action, and nexus tests. See id. at 31-36. The Court also found that the Director Defendants are state actors given the legislative pronouncement that these Directors act with the authority of the State. See id. at 26-27 (quoting

-2-

NMSA 1978 § 52-9-6)("Directors are appointed public officials of the state while carrying out their duties and activities under the Employers Mutual Company Act.").

In its April 19, 2004 Memorandum Opinion, the Court also determined that the Plaintiffs Beverly Jornigan's, Dwight Ward's, and Jon Moran's written 1997 and 2000 executive compensation contracts – which the superintendent of insurance disapproved in their entirety – were unenforceable pursuant to § 59A-34-17(A) NMSA 1978. The Court therefore granted the NMMCC Defendants' motion to dismiss with respect to the 1997 and 2000 written contracts. See April 19, 2004 Memorandum Opinion at 21-22. The Court also addressed the Plaintiffs' implied contract claims, finding that any implied contracts including the same volume-based compensation provisions as the Plaintiffs' written contracts were unenforceable for the same reasons. See id. at 22-23. In footnote eight, however, the Court explained: "The Court's ruling applies to the implied contract claims only to the extent that those contracts include provisions subject to superintendent review. To the extent that the Plaintiffs rely on implied contracts that do not include volume-based compensation provisions, the Court does not intend to address those claims." Id. at 23 n. 8. Thus, the Court left open a possibility that the Plaintiffs might establish the existence of implied contracts that did not contain volume-based compensation provisions.

Relying on the Court's April 19, 2004 Memorandum Opinion, the NMMCC Defendants filed a second motion to dismiss, in which they assert the defenses of sovereign immunity under the Eleventh Amendment and the qualified immunity available to governmental employees sued in their individual capacities. The NMMCC Defendants also assert various defenses to the Plaintiffs' state law claims which are available to governmental agencies and employees. The NMMCC Defendants move the Court, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts

II (Section 1983 - Equal Protection Violation), III (Section 1983 - Due Process Violation), V

(Wrongful Discharge), VII (Implied Contract), and VIII (Negligence) of the Complaint.

## STANDARD FOR DECIDING A MOTION TO DISMISS

"When a federal court reviews the sufficiency of a complaint [under Federal Rule of Civil

Procedure 12(b)(6)], before the reception of any evidence either by affidavit or admissions, its task

is necessarily a limited one."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other

grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).  "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Id.

Thus, in considering a motion to dismiss for failure to state a claim, the Court must liberally construe

the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences

in the plaintiff's favor.  See Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).  The Court need

not, however, accept a plaintiff's conclusory allegations.  See id.  The Court should dismiss the

complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## LAW REGARDING ELEVENTH AMENDMENT

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S.

Const. Amend. XI.  The courts have sometimes referred to the states' immunity from suit as

"Eleventh Amendment immunity."

> The phrase is convenient shorthand but something of a misnomer, for the sovereign
> immunity of the States neither derives from, nor is limited by, the terms of the
> Eleventh Amendment.  Rather, as the Constitution's structure, its history, and the

> authoritative interpretations by [the Supreme] Court make clear, the States' immunity
> from suit is a fundamental aspect of the sovereignty which the States enjoyed before
> the ratification of the Constitution, and which they retain today.

Alden v. Maine, 527 U.S. 706, 713 (1999). Thus, while the explicit terms of the Eleventh Amendment do not include citizens' suits against their own state, "the [Supreme] Court has upheld States' assertions of sovereign immunity in various contexts falling outside the literal text of the Eleventh Amendment." Id. at 727 (citing Hans v. State of Louisiana, 134 U.S. 1 (1890), which held that sovereign immunity barred a citizen from suing his own state under federal-question jurisdiction). The federal courts have broadly construed the Eleventh Amendment to render states immune from suits that private parties bring in federal court. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

The Civil Rights Act of 1871, under which the Plaintiffs assert Counts II and III of their Complaint, provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 does not include an abrogation of the states' sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 341 (1979). Thus, in "a [42 U.S.C.] § 1983 action . . . a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury." Id. at 338 (citations omitted).    "A suit generally may not be maintained directly against the State itself, or against an agency or department of the State, unless the State has waived its sovereign immunity." Florida Dep't of State v. Treasure

Salvors, Inc., 458 U.S. 670, 684 (1982); Edelman v. Jordan, 415 U.S. 651, 663 (1974)(noting that

state officials are immune under the Eleventh Amendment when they are sued in their official

capacities).  Thus, the Eleventh Amendment "'largely shields States from suit in federal court without

their consent, leaving parties with claims against a State to present them, if the State permits, in the

State's own tribunals.'"   Duke v. Grady Municipal Schools, 127 F.3d 972, 974 (10th Cir.

1997)(quoting Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39 (1994)).   "Eleventh

Amendment immunity, however, extends only to the states and governmental entities that are arms

of the state."  Duke v. Grady Municipal Schools, 127 F.3d at 974 (internal quotations and citations

omitted).

      To determine whether an entity is an "arm of the state" for purposes of the Eleventh

Amendment, the Tenth Circuit makes two general inquiries:

> [T]he court first examines the degree of autonomy given to the agency, as determined
> by the characterization of the agency by state law and the extent of guidance and
> control exercised by the state.  Second, the court examines the extent of financing the
> agency receives independent of the state treasury and its ability to provide for its own
> financing.  The governmental entity is immune from suit if the money judgment sought
> is to be satisfied out of the state treasury.

Id. at 974 (quoting Watson v. University of Utah Med. Ctr., 75 F.3d 569, 574-75 (10th Cir.1996))

(internal quotations omitted).  "The Supreme Court has indicated . . . that 'the vulnerability of the

State's purse [i]s the most salient factor in Eleventh Amendment determinations.'"  Duke v. Grady

Municipal Schools, 127 F.3d at 974 (quoting Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. at

48).

      The determination whether an entity is an arm of the state for Eleventh Amendment purposes

is a matter of federal law, but "that federal question can be answered only after considering the

provisions of state law that define the agency's character." Regents of the University of California v. Doe, 519 U.S. 425, 430 n.5 (1997).  With regard to this interplay between federal and state law, the United States Court of Appeals for the Seventh Circuit has observed:

> [I]n deciding whether [an entity] is the alter ego of the State . . . for Eleventh Amendment purposes, we confront a matter of federal, not state, law . . . .  A state would have too much self-interest in extending sovereign immunity to as many of its agencies and corporate creations as possible to allow local laws to be determinant.

Miller-Davis Co. v. Illinois State Toll Highway Authority, 567 F.2d 323, 330 (7th Cir. 1977).

## LAW REGARDING QUALIFIED IMMUNITY

Section 1983 actions have the potential to subject government officials to costly and harassing litigation and inhibit officials in performing their official duties.  On the other hand, "[w]hen government officials abuse their offices, 'action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees.'"  Anderson v. Creighton, 483 U.S. 635, 638 (1987)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 814(1982)).  Courts have recognized the affirmative defense of qualified immunity to accommodate and balance these competing interests. See Anderson v. Creighton, 483 U.S. at 638.

When a defendant raises the defense of qualified immunity, the plaintiff must allege facts showing that the individual defendant's actions violated a constitutional right and that the constitutional right was clearly established at the time of the alleged violation.  See Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995).  Under Harlow v. Fitzgerald, and its progeny, courts evaluating qualified immunity claims "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'"  Wilson v. Layne, 526 U.S. 603,

609 (1999)(quoting <u>Conn v. Gabbert</u>, 526 U.S. 286, 290 (1999)).  "This order of procedure is designed to 'spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.'"  <u>Wilson v. Layne</u>, 526 U.S. at 609 (quoting <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)).  "Deciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public."  <u>Wilson v. Layne</u>, 526 U.S. at 609 (citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 840-842 n.5 (1998)).

The fundamental principle underlying qualified immunity is that a public official must have notice that his or her conduct is unconstitutional before he or she is subject to § 1983 liability.  <u>See, e.g.</u>, <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)("[Q]ualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'")(quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001)).  The unlawfulness of the conduct must be apparent "in the light of pre-existing law."  <u>Anderson v. Creighton</u>, 483 U.S. at 640 (citations omitted).  "Qualified immunity specially protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment."  <u>Ryder v. United States</u>, 515 U.S. 177, 185 (1995)(citing <u>Harlow v. Fitzgerald</u>, 457 U.S. at 806).  "Qualified immunity is available to officials who err in their duties so long as the mistake is one that a 'reasonable' [official] could have made, <u>Berthiaume v. Caron</u>, 142 F.3d 12, 15 (1st Cir.1998), and the standard is favorable to the officer, protecting 'all but the plainly incompetent or those who knowingly violate the law,' <u>Malley v. Briggs</u>, 475 U.S. 335, 341, (1986)."  <u>Liu v. Phillips</u>, 234 F.3d 55, 57 (1st Cir. 2000).

The United States Court of Appeals for the Tenth Circuit has explained that, "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision

on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Salehpoor v. Shahinpoor, 358 F.3d 782, 785 (10th Cir. 2004)(citations omitted). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. at 640. The Supreme Court has stated that "a reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. at 819.

"[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs, 475 U.S. at 341. On the other hand, qualified immunity is not a license for lawless conduct. See Harlow v. Fitzgerald, 457 U.S. at 819. In deciding whether a right is clearly established, "[q]ualified immunity does not protect official conduct simply because the Supreme Court has never held the exact conduct at issue unlawful. Rather, the shield of qualified immunity is pierced if in light of pre-existing law, the unlawfulness of the conduct is apparent to the [official]." Lawmaster v. Ward, 125 F.3d 1341, 1350 (10th Cir. 1997); Anderson v. Creighton, 483 U.S. at 640 ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.")(citations omitted). See Harris v. Maynard, 843 F.2d 414, 417 n.4 (10th Cir. 1988)("[A] precisely analogous case is not required to pierce an [official's] immunity where the unlawfulness is apparent in light of the pre-existing law.").

## SOVEREIGN IMMUNITY UNDER NEW MEXICO LAW

This case involves two sources of sovereign immunity under New Mexico law. The first source is a state statute which provides that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract." § 37-1-23(A) NMSA

1978 (1990 Repl.).  The second source is the New Mexico Tort Claims Act, which provides that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived [herein]."  § 41-4-4(A) NMSA 1978 (2003 Cum. Supp.).  Under the New Mexico Tort Claims Act, the term "governmental entity" is defined as "the state or any local public body."  § 41-4-3 NMSA 1978 (2003 Cum. Supp.).  In turn, the terms "state" and "local public body" are defined as "the state of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions," § 41-4-3(H) NMSA 1978 (2003 Cum. Supp.), and "all political subdivisions of the state and their agencies, instrumentalities and institutions," § 41-4-3(C) NMSA 1978 (2003 Cum. Supp.).

## LEGAL ANALYSIS

The NMMCC Defendants contend that, as a consequence of the April 19, 2004 Memorandum Opinion, they are entitled to dismissal of all § 1983, contract, and tort claims, for four reasons.  First, under the Eleventh Amendment, NMMCC is immune from § 1983 claims in federal court.  Second, the Director Defendants are entitled to qualified immunity from § 1983 actions.  Third, as a governmental entity, § 37-1-23(A) NMSA 1978 protects NMMCC from enforcement of any contract, regardless of its terms, absent a valid written agreement.  Finally, as a governmental entity, the New Mexico Tort Claims Act protects the NMMCC Defendants from liability for those torts alleged in this action.  Because the Court's April 19, 2004 Memorandum Opinion decided only the issue before the Court at that time, namely whether the NMMCC Defendants are state actors for purposes of § 1983, that decision does not dictate the result that the Defendants urge.  Because the Court finds, after an analysis independent from its earlier decision, that the NMMCC Defendants are not entitled to Eleventh Amendment immunity under federal law or to sovereign immunity under state law, it will

not dismiss the Plaintiffs' claims on those grounds.  With respect to the issue of qualified immunity, the Court finds that the Director Defendants are not immune and will also deny the motion on that basis.

I. **THE NMMCC DEFENDANTS ARE NOT ENTITLED TO ELEVENTH AMENDMENT IMMUNITY BECAUSE NMMCC IS NOT AN "ARM OF THE STATE" FOR PURPOSES OF THE ELEVENTH AMENDMENT AND THE DIRECTOR DEFENDANTS ARE SUED ONLY IN THEIR INDIVIDUAL CAPACITIES.**

The NMMCC Defendants argue that they are entitled to immunity from suit in federal court under the Eleventh Amendment because NMMCC is a governmental entity and the Director Defendants are public officials.  The NMMCC Defendants base this argument on the Court's April 19, 2004 Memorandum Opinion.  Because the Court's earlier opinion did not address the question of Eleventh Amendment immunity, and decided only the issue of state action for purposes of § 1983, the Court believes that it must engage in an analysis under the Eleventh Amendment that is independent of its earlier determination regarding state action.  Based on the case law from the Supreme Court and from the Tenth Circuit, NMMCC is not entitled to Eleventh Amendment immunity from suit in federal court.  The Director Defendants are not entitled to Eleventh Amendment immunity because the Plaintiffs have sued them only in their individual, rather than official, capacities.

A. **NMMCC IS NOT AN "ARM OF THE STATE" FOR PURPOSES OF THE ELEVENTH AMENDMENT.**

Eleventh Amendment immunity extends only to the states and to governmental entities that are arms of the states.  See Duke v. Grady Municipal Schools, 127 F.3d at 974.  The Tenth Circuit has stated that, in determining whether an entity is an arm of the state for purposes of the Eleventh

Amendment, the district court should make two inquiries.  First, the Court should examine the degree of autonomy that state law gives the agency, and the extent of guidance and control that the state exercises over the agency.  See id.  Second, the Court must examine the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing.  See id.  With respect to this second element, the Tenth Circuit indicated that the governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury.  See id. "The Supreme Court has indicated . . . that 'the vulnerability of the State's purse [i]s the most salient factor in Eleventh Amendment determinations.'"  Id. (quoting Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. at 48).  The Tenth Circuit has continued to rely upon these two factors and has explained them in further detail.

> Under the general rubrics of autonomy and financial independence, we have identified several other factors relevant to the arm-of-the-state determination: (1) the characterization of the governmental unit under state law; (2) the guidance and control exercised by the state over the governmental unit; (3) the degree of state funding received; and (4) the governmental unit's ability to issue bonds and levy taxes on its own behalf.

Sturdevant v. Paulsen, 218 F.3d 1160, 1166 (10th Cir. 2000)(citations omitted).

Although the determination whether an entity is an arm of the state for purposes of the Eleventh Amendment is a matter of federal law, the Court must determine that issue by looking to state law and ascertaining the nature of the relationship between the entity and the state.  The state law at issue, the Employers Mutual Company Act, § 52-9-1 to § 52-9-25 NMSA 1978 (2003 Repl.), indicates that New Mexico did not bestow NMMCC with a character akin to "an arm of the state." Indeed, multiple provisions of the Employers Mutual Company Act compel the opposite conclusion.

The New Mexico Legislature created NMMCC as a "non-profit, independent, public

-12-

corporation." § 52-9-4 NMSA 1978 (2003 Repl.).  Although NMMCC is a public corporation, the State has elected to deny it status as a state agency.  See § 52-9-21 NMSA 1978 (2003 Repl.)("The company shall not be considered a state agency for any purpose.").  As such, NMMCC is exempt from "all state personnel, salary and procurement statutes, rules and regulations." Id.  Thus, New Mexico does not treat NMMCC as "an arm of the state."

Further, "[t]he insurance operations of [NMMCC] are subject to all of the applicable provisions of the Insurance Code in the same manner as those provisions apply to a private insurance company.  [NMMCC] is subject to the same tax liabilities and assessments as a private insurance company." Id.  NMMCC is "liable to the same extent as any private insurance company for the payments that are required to be made . . . to protect against the insolvency of any other insurer of workers' compensation or occupational disease disablement." § 52-9-10(B) NMSA 1978 (2003 Repl.).  That New Mexico taxes NMMCC as it does private insurers demonstrates that the state does not interact with NMMCC as a state entity or arm of the state.

When the Court considers NMMCC's character, as described by state law, in light of the first factor set forth in Duke v. Grady Municipal Schools, the Court believes that the Legislature has conferred NMMCC's board of directors with a high level of autonomy in its operations of the insurance company.  Specifically, § 52-9-5 provides:

> The power to set the policies and procedures for the company is vested in the board. The board may perform all acts necessary or appropriate to exercise that power.  The board shall have the same power, authority and jurisdiction as that authorized by law for the governing body of a private insurance carrier.

§ 52-9-5(H) NMSA 1978 (2003 Repl.).  The Legislature has authorized NMMCC to "conduct all business and affairs and perform all acts in carrying out its function whether or not specifically

designated [by statute]." § 52-9-16(G) NMSA 1978 (2003 Repl.).  NMMCC competes with private

insurers for its insurance business.  See § 52-9-10(A) NMSA 1978 (2003 Repl.).  This autonomy

indicates a level of state involvement in NMMCC's day-to-day activities that is insufficient to confer

Eleventh Amendment immunity upon NMMCC.  See Brotherton v. Cleveland, 173 F.3d 552, 560-61

(6th Cir. 1999)(holding medical clinics not entitled to Eleventh Amendment immunity, despite

presence of state action, given state's limited control over clinics); Granberg v. Ashland County, 590

F. Supp. 1005, 1011 (W.D. Wis. 1984)(holding that state actor performing "quintessential state

function" not entitled to Eleventh Amendment immunity given state's limited involvement in

operation of board).

The scope of the Board of Directors' powers and the Legislature's characterization of

NMMCC suggest that NMMCC is not an arm of the state.  The Court recognizes, however, that the

state does exercise some degree of guidance and control over NMMCC's daily operations.  The

Legislature has stated that "[d]irectors are appointed public officials of the state while carrying out

their duties and activities[.]"  § 52-9-6 NMSA 1978 (2003 Repl.).  If the daily operations of the

company depend on public officials, the Court cannot say that NMMCC is completely autonomous

from the state.  Thus, there appears to be evidence pointing in both directions with respect to the first

Duke factor.

While there may be some uncertainty regarding the first Duke factor, consideration of the

second Duke factor demonstrates that NMMCC is not entitled to Eleventh Amendment immunity.

NMMCC is privately financed and receives no state funding.  See § 52-9-20 NMSA 1978 (2003

Repl.)("The company shall not receive any state appropriation.").  More importantly, the Plaintiffs

may not access the State of New Mexico's treasury to satisfy any judgment against the NMMCC

Defendants in this action.  See § 52-9-8 NMSA 1978 (2003 Repl.)("The state shall not be liable for any obligations incurred by the company.").  The Legislature expressed an intent that the finances of the state and of NMMCC remain separate.  § 52-9-19 NMSA 1978 (2003 Repl.)("The money of the company is not state money.  The property of the company is not state property.").

Finally, consideration of NMMCC's ability to issue bonds and to levy taxes on its own behalf also counsel against a finding of Eleventh Amendment immunity.  Although NMMCC is authorized by statute to issue revenue bonds for its continued development and operation, those bonds are "payable solely from premiums received from insurance policies and other revenues generated by the company."  § 52-9-25 NMSA 1978 (2003 Repl.).  And not only is NMMCC unable to levy taxes on its own behalf, it is also subject to payment of state taxes itself.  See § 52-9-21 NMSA 1978 (2003 Repl.)("The company is subject to the same tax liabilities and assessments as a private insurance company.").  In sum, state law does not characterize NMMCC as a governmental entity, and NMMCC operates as an independently financed insurance company without the benefit of any state funds or the ability to levy taxes; the State's treasury will be invulnerable should the Plaintiffs take judgment against NMMCC.  The Court will therefore deny NMMCC's motion to dismiss based on its assertion that it is entitled to Eleventh Amendment immunity.

## B.    THE ELEVENTH AMENDMENT DOES NOT APPLY TO PUBLIC OFFICIALS SUED IN THEIR INDIVIDUAL CAPACITIES.

The Eleventh Amendment does not bar claims for damages against state officials in their individual capacities.  See Cornforth v. University of Oklahoma Bd. of Regents, 263 F.3d 1129, 1132 (10th Cir. 2001); Griess v. State of Colo., 841 F.2d 1042, 1046 (10th Cir. 1988)(holding that a state's decision to indemnify a public employee sued in his individual capacity does not confer

Eleventh Amendment immunity upon the indemnified employee). In this case, the Plaintiffs have brought their claims against the Director Defendants in their individual capacities. See Complaint for Title VII Violations, Civil Rights Violations, and State Statutory and Common Law Claims ¶ 9, at 2, filed July 10, 2003 (Doc. 1). Accordingly, the Director Defendants are not entitled to Eleventh Amendment immunity.[1]

## II.    THE DIRECTOR DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

The Plaintiffs can overcome the Director Defendants' claim of qualified immunity by demonstrating that the conduct alleged in the Complaint amounts to a violation of a constitutional right that was clearly established at the time of the violation. The Complaint adequately states causes of action against the Director Defendants for violations of the Plaintiffs' equal protection and due process rights. These substantive rights were clearly established at the time of the Defendants' conduct. The Court does not believe that the Director Defendants' subjective lack of knowledge that they were state actors for purposes of § 1983 is sufficient to entitle them to qualified immunity. Accordingly, the Court will deny the motion on that basis.

### A.    THE PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THE EXISTENCE OF A CONSTITUTIONAL VIOLATION.

The first inquiry under the two-part qualified immunity analysis is whether the Director Defendants' alleged conduct violates a constitutional right. The Director Defendants contend that

---

[1] At the hearing on this motion, the NMMCC Defendants agreed that the Eleventh Amendment issue is moot with respect to the Director Defendants, because the Plaintiffs have sued them solely in their individual capacities. See Transcript of Motion Hearing at 10:8-19 (June 18, 2004)("Transcript").

The Court's citations to the transcript refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

they are entitled to qualified immunity because the Plaintiffs have not adequately alleged a violation of their constitutional rights under the due process and equal protection clauses. The Director Defendants argue that the Plaintiffs' allegations are vague and that the Plaintiffs have not alleged the violation of a particular right. Because this motion is one to dismiss, rather than for summary judgment, the Court need not examine whether the record creates a genuine issue of material fact with respect to the allegations and assumes the allegations to be true. The Court believes that the allegations in the Complaint are sufficient to state causes of action for equal protection and due process violations. Accordingly, the Plaintiffs have satisfied the first portion of the qualified immunity test.

### 1.    Equal Protection Violation

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. The Supreme Court has recognized that the Equal Protection Clause of the Fourteenth Amendment applies to claims brought by a "class of one," where the plaintiff alleges that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)(per curiam). Courts have upheld "class of one" cases "in which a governmental body treated individuals differently who were identically situated in all respects rationally related to the government's mission." Indiana State Teachers Ass'n v. Board of School Comm'rs of the City of Indianapolis, 101 F.3d 1179, 1181 (7th Cir. 1996)(citing Rubinovitz v. Rogato, 60 F.3d 906, 911-12 (1st Cir. 1995); Zeigler v. Jackson, 638 F.2d 776, 779 (5th Cir. 1981); LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)). "While the principal target of the equal protection clause is

discrimination against members of vulnerable groups, the clause protects class-of-one plaintiffs victimized by 'the wholly arbitrary act.'" Indiana State Teachers Ass'n v. Board of School Com'rs of the City of Indianapolis, 101 F.3d at 1181 (quoting City of New Orleans v. Dukes, 427 U.S. 297, 304 (1976)(per curiam)).

The Plaintiffs allege that NMMCC entered into employment contracts with NMMCC's President, Warren Smalley, and each of the Plaintiffs in October, 2000.  See Complaint ¶ 20, at 4. These employment contracts covered the period from October 1, 2000 to October 1, 2003, and "thereafter until the Employee resigns or is involuntarily terminated."  Id. ¶ 21, at 4.  These employment contracts provided that the Plaintiffs and Smalley would receive salaries for their work on behalf of NMMCC, Southwest Casualty Company, and Risk Watch, Inc., and additional compensation for work performed on behalf of Foundation Reserve Insurance Company.  See id. ¶ 22, at 4.

The employment contracts also provided that NMMCC could terminate the Plaintiffs only for cause and contained a severability clause.  See id. ¶ 23, at 4.  The Director Defendants approved these employment contracts.  See id. ¶ 24, at 4.  The Plaintiffs allege that, in that regard, NMMCC's President, Warren Smalley, and each of the Plaintiffs were similarly situated in all relevant respects with regard to their employment contracts with NMMCC.  See id. ¶ 68, at 10.  Nevertheless, after the Department of Insurance disapproved all of the contracts, the Director Defendants placed the Plaintiffs on administrative leave, and ultimately fired them, while retaining Smalley.  See id. ¶ 69, at 11.  The Plaintiffs further allege that the Director Defendants treated the Plaintiffs differently from Smalley, even though they had no rational basis for doing so.  See id.

The Plaintiffs' Complaint sufficiently alleges that the Director Defendants acted with

-18-

discriminatory intent.  The Plaintiffs allege that the Director Defendants' acts against Jornigan were based upon Jornigan's sex, and upon the Director Defendants' ill will toward her in light of her complaints of discrimination, and that their acts against Ward and Moran were based on their ill will toward these Plaintiffs, after these Plaintiffs told the Director Defendants that they supported Jornigan.  See id. ¶¶ 70-71, at 11.  The Plaintiffs allege that the Director Defendants acted willfully, with bad purpose, and with deliberate indifference to the Plaintiffs' Equal Protection rights, and proximately caused the Plaintiffs damages and injuries, including but not limited to lost wages and benefits.  See id. ¶¶ 72-73, at 11.

The foregoing allegations demonstrate that the Plaintiffs have sufficiently stated a claim that the Director Defendants violated their Equal Protection rights.  The Court has held that the Director Defendants are state actors for purposes of the United States constitution.  The Plaintiffs have adequately alleged that the Director Defendants, as governmental actors, intentionally discriminated against them by treating them differently than Smalley without any rational basis for doing so.  Thus, the Plaintiffs have successfully pled an Equal Protection violation.

## 2.    Due Process Violation

The Constitution prohibits a governmental entity from depriving a public employee of a property interest in continued employment without due process of law.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).  "A contract that promises continued employment except for 'just cause,' . . . creates a property interest in continued employment." Kingsford v. Salt Lake City School Dist., 247 F.3d 1123, 1129-30 (10th Cir. 2001).  "A fundamental principle of procedural due process is a hearing before an impartial tribunal."  See Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 518 (10th Cir. 1998)(citing Withrow v. Larkin, 421 U.S. 35, 46-47 (1975)).

-19-

The Director Defendants make two arguments that the Plaintiffs' due process claims should fail as a matter of law. First, the Director Defendants argue that the Plaintiffs are not public employees and therefore not entitled to procedural due process protections. The Director Defendants point out that the Plaintiffs do not meet any state law definition of public employee, did not receive compensation from state funds, did not receive state employment benefits, and that the Plaintiffs may have waived any procedural due process rights they had by failing to avail themselves of an appeal under the Personnel Act, § 10-9-1 to § 10-9-25 NMSA 1978 (2003 Repl.). Second, the Director Defendants argue that the Plaintiffs did not have a property interest in their continued employment because the Department of Insurance disapproved their employment contracts.

The Director Defendants may be correct that the Plaintiffs are not public employees within the definition of state law. The Court does not believe, however, that such a classification is necessary to the Plaintiffs' federal due process claims. The Court has found that NMMCC is a governmental entity for purposes of the federal constitution. New Mexico law also provides that the Director Defendants are "appointed public officials of the state." § 52-9-6 NMSA 1978 (2003 Repl.). Assuming that the Plaintiffs have a protected property interest, the Court believes that public officials charged with overseeing the day-to-day operations of an organization that is a governmental entity for purposes of § 1983 must afford their employees due process before depriving them of those property interests.

There is no dispute that the Plaintiffs were NMMCC employees. In light of the Court's earlier ruling that NMMCC is a governmental entity for constitutional purposes, the Plaintiffs may also be considered governmental employees for constitutional purposes. Thus, the Court will not dismiss the

Plaintiffs' due process claims on the ground that they are not public employees.

With respect to the argument that the Plaintiffs did not have protected property interests in their continued employment with NMMCC, the Court has previously entered a ruling on that issue. That the Department of Insurance disapproved the Plaintiffs' 2000 employment contracts does not necessarily mean that the Plaintiffs did not have any protected property interest. They have adequately alleged that subsequent contracts created a legitimate expectation of continued employment. Accordingly, the Court finds that the Plaintiffs have sufficiently alleged a protected property interest to survive a motion to dismiss. Taking the Plaintiffs' allegations as true, which it must at this stage, the Court believes that the allegations in the Complaint are sufficient to demonstrate that the Director Defendants violated the Plaintiffs' procedural due process rights.

**B.    THE LAW WAS CLEARLY ESTABLISHED AT THE TIME OF THE ALLEGED VIOLATIONS.**

Notwithstanding the fact that the Plaintiffs' allegations amount to constitutional violations, the Director Defendants are entitled to qualified immunity if the rights allegedly violated were not clearly established at the time of the Director Defendants' conduct. "The key to the qualified immunity inquiry is the 'objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken.'" Tonkovich v. Kansas Bd. of Regents 159 F.3d 504, 516 (10th Cir. 1998)(internal quotation marks and citation omitted).

The Director Defendants do not dispute that the substantive rights at issue in this case were clearly established. The right not to be discriminated against by a governmental entity and not to be terminated from public employment without due process are clearly established. The Director Defendants' argument does not focus on the Plaintiffs' rights at all, but instead on the Defendants'

status as state actors.  The Director Defendants argue that they are entitled to qualified immunity

because "a reasonable NMMCC Board Member voting to terminate the employment of Plaintiffs at

the time could not have known that firing Plaintiffs would trigger constitutional considerations."

Memorandum in Support of NMMCC Defendants' Second Rule 12(B)(6) Motion to Dismiss at 7,

filed May 26, 2004 (Doc. 98).  Essentially, the Director Defendants argue that they are entitled to

qualified immunity because they did not know that they were state actors.

The Director Defendants are correct in pointing out that no court had previously found them

to be state actors subject to suit under § 1983.  That fact does not end the inquiry of whether the law

was clearly established in this case.  To be clearly established, "[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right."

Anderson v. Creighton, 483 U.S. 635, 640 (1987).  In Anderson v. Creighton, the Supreme Court

recognized that the operation of such a standard "depends substantially upon the level of generality

at which the relevant 'legal rule' is to be identified."  Id. at 639.  The Supreme Court cautioned

against requiring too specific a correlation between the misconduct and the established law, refusing

to hold that "an official action is protected by qualified immunity unless the very action in question

has previously been held unlawful."  Id. at 640.  Rather, the correct standard is that "in the light of

pre-existing law the unlawfulness must be apparent."  Id.  The analysis, however, remains an objective

one.  The Director Defendants' subjective beliefs are irrelevant.  See id. at 641 ("The relevant

question in this case, for example, is the objective (albeit fact-specific) question whether a reasonable

officer could have believed [the Defendant's] warrantless search to be lawful, in light of clearly

established law and the information the searching officers possessed.  [The Defendant's] subjective

beliefs about the search are irrelevant.").

The Director Defendants argue that "[t]he only pre-existing law at the time was the Employers Mutual Company Act, which states throughout that NMMCC is not a state agency, is not subject to state personnel requirements, and is to be managed, operated, and regulated as a private insurance company."  NMMCC Defendants' Memorandum in Support at 8.  The Court believes, however, that other law existed that should have informed the Director Defendants' conduct.  And while the Court agrees with the Director Defendants that one of the fundamental principles underlying qualified immunity is that a public official must have notice that his or her conduct is unconstitutional before being subject to § 1983 liability, it is also true that "a reasonably competent public official should know the law governing his conduct."  Harlow v. Fitzgerald, 457 U.S. at 819.

Despite the statutes indicating that NMMCC is not a state agency, a reasonable director serving on NMMCC's board would know that NMMCC is not a private insurance company.  A majority of the directors are appointed by the governor of New Mexico.  See § 52-9-5(D) NMSA 1978 (2003 Repl.).  The New Mexico Legislature provided that "[d]irectors are appointed public officials of the state."  § 52-9-6 NMSA 1978 (2003 Repl.).

Moreover, the Supreme Court has analyzed a similar entity and determined that it was subject to constitutional constraints.  See Lebron v. National Railroad Passenger Corp., 513 U.S. 374 (1995).  Thus, since at least 1995, the Director Defendants were on notice that a court could find them to be employed by a governmental entity for purposes of the federal constitution.  As the Court discussed in its April 19, 2004 Memorandum Opinion, there are a number of similarities between Amtrak and NMMCC.  NMMCC meets each of the criterion that the Supreme Court relied upon in concluding that Amtrak was subject to constitutional constraints.  The Supreme Court also indicated that its reasoning was not limited to federal governmental entities or to the particular constitutional provision

-23-

before it.  See Lebron v. National Railroad Passenger Corporation, 513 U.S. at 397 ("It surely cannot be that government, *state or federal*, is able to evade *the most solemn obligations imposed in the Constitution* by simply resorting to the corporate form. ")(emphasis added); id. at 394 ("Facing the question of Amtrak's status for the first time, we conclude that it is an agency or instrumentality of the United States *for the purpose of individual rights guaranteed against the Government by the Constitution*.")(emphasis added).

Similarly, that a New Mexico statute provided that NMMCC "shall not be considered a state agency for any purpose" does not entitle the Director Defendants to qualified immunity.  The Supreme Court rejected such a limitation in Lebron.  Moreover, such a statute is not determinative as to federal constitutional requirements, and precludes an action against NMMCC for failing to follow the Personnel Act, not a § 1983 claim.  The Plaintiffs have not brought an action under the Personnel Act against the Director Defendants.

Although confronted with the question, the parties did not provide the Court with authority addressing the issue whether a defendant's lack of knowledge that he or she is a state actor is sufficient to entitle him or her to qualified immunity.  The Court located one district court case from the District of Nebraska in which the court addressed this argument.

> Specifically, defendants assert that a reasonable person in the position of the defendants would not have known that the termination constituted state action, thereby subjecting the parties to constitutional strictures.  According to the defendants, "no reasonably well-informed public official could be expected to anticipate [the] legal determination" that MNMRSI is a state actor.  I disagree.  As noted above, the Eighth Circuit in 1982 held that a private nonprofit mental health center was a state actor.  Viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, the center in [the earlier case] was similar in most, if not all, major respects to MNMRSI.  Thus, the holding in that case was sufficient to put the defendants on notice that MNMRSI could be considered a state actor for purposes of the Fourteenth Amendment.  Additionally, gender-based discrimination

-24-

by state actors was clearly proscribed by the Constitution at the time of plaintiff's termination.  Goodwin v. Circuit Court, 729 F.2d 541, 545-46 (8th Cir.1984)("[t]he right to be free of invidious discrimination on the basis of sex is certainly clearly established").  I therefore conclude that the defendants are not entitled to qualified immunity.

Schmitz v. Mid Nebraska Mental Retardation Service, Inc., 1995 WL 935760 at *10 (D. Neb. 1995). The Court agrees with this reasoning.  Despite the fact that no court had applied constitutional requirements to NMMCC or its Directors in the past, sufficient law existed at the time of the Plaintiffs' terminations to put a reasonable Director on notice that their actions would trigger constitutional considerations.  Accordingly, the Court finds that the Director Defendants are not entitled to qualified immunity.

## III.   NMMCC IS NOT ENTITLED TO SOVEREIGN IMMUNITY UNDER STATE LAW.

NMMCC asserts that it is immune from the Plaintiffs' state law tort and contract claims because New Mexico statutes provide immunity to "governmental entities."  NMMCC argues that, because the Court found that it is a governmental entity for purposes of § 1983, it is thus entitled to the protection of these state statutes.  The Court's earlier ruling, however, was intended to address the sole question whether the NMMCC Defendants are state actors under federal law for purposes of § 1983.  The Court did not intend for its April 19, 2004 Memorandum Opinion to decide the question at issue in the current motion, whether NMMCC is a governmental entity under New Mexico law for purposes of state sovereign immunity.  Because the Court believes that state law governs this question, and that it appears that the New Mexico Legislature did not intend NMMCC to enjoy the status of a governmental entity, the Court finds that NMMCC is not entitled to immunity from the Plaintiffs' tort and contract claims.

### A.     THE NEW MEXICO TORT CLAIMS ACT DOES NOT PROVIDE A BASIS FOR IMMUNITY.

NMMCC argues that it is immune from liability from the Plaintiffs' tort claims for wrongful discharge (Count V) and negligence (Count VIII), because there is no waiver of immunity for those claims under New Mexico's Tort Claims Act, NMSA 1978, § 41-4-1 through § 41-4-29.   The Plaintiffs contend that NMMCC is not immune from the Plaintiffs' state tort claims, because it is not a "governmental entity" for purposes of the New Mexico Tort Claims Act.  § 41-4-4 NMSA 1978 (2003 Cum. Supp.).  Because the Tort Claims Act specifically defines the term "governmental entity" and NMMCC does not appear to meet any of the given definitions, and because it appears that the New Mexico Legislature did not intend NMMCC to be immune from suit, the Court believes that New Mexico law requires it to reject NMMCC's arguments.

The New Mexico Tort Claims Act defines a "governmental entity" as "the state or any local public body," which the Act in turn defines as "political subdivisions of the state" and "the state of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions." § 41-4-3(B),(C), and (H) NMSA 1978 (2003 Cum. Supp.).  The Court does not believe NMMCC is a "local public body."  It is not a political subdivision of the state, nor an agency, instrumentality, or institution of a political subdivision.  NMMCC agreed with this point at oral argument.  See Transcript at 12:18-21.

NMMCC argues that the Court should, based on its earlier ruling, consider NMMCC to be one of the "branches, agencies, departments, boards, instrumentalities or institutions" of the state of New Mexico.  § 41-4-3(H) NMSA 1978 (2003 Cum. Supp.).  Although it is true that the Court found NMMCC to be a governmental entity in its April 19, 2004 Memorandum Opinion, that finding did

not involve an analysis under the New Mexico Tort Claims Act.  To the contrary, the finding that NMMCC is a governmental entity resulted from an analysis of federal standards and federal law, and was intended to address the specific issue whether NMMCC is subject to suit under § 1983.  See April 19, 2004 Memorandum Opinion at 31 ("The Court finds that NMMCC is a governmental entity for purposes of the Plaintiffs' constitutional claims.").  The Court did not address NMMCC's status as a governmental entity for purposes of the Plaintiffs' state law claims.

Engaging in an independent analysis under state law, as it must, the Court does not believe NMMCC qualifies as a branch, agency, department, board, instrumentality, or institution of the state. See § 41-4-3(B) and (H) NMSA 1978 (2003 Cum. Supp.).  The New Mexico Legislature provided that NMMCC "shall not be considered a state agency for any purpose."  § 52-9-21 NMSA 1978 (2003 Repl.).  The Court believes that the plain language of § 52-9-21 requires a finding that NMMCC is not a state agency under New Mexico statutory law, including the Tort Claims Act. Any other reading would render the plain language that NMMCC is not a state agency "for any purpose" a nullity.  Id.

For similar reasons, the Court also does not believe that NMMCC is a branch, department, board, instrumentality, or institution of the state.  When the Legislature created NMMCC, it called the company a "nonprofit, independent, public corporation."  § 52-9-4 NMSA 1978 (2003 Repl.). That label does not seem to coincide with the categories included in the Tort Claims Act's definition of "governmental entity."  NMMCC has not presented the Court with any authority beyond the April 19, 2004 Memorandum Opinion to support the argument that it is a branch, department, board, instrumentality, or institution of the state.

Even if NMMCC did meet the definition of a governmental entity under the New Mexico Tort

-27-

Claims Act, the New Mexico Legislature demonstrated its intent that NMMCC be sued without regard to the governmental immunities expressed in the Tort Claims Act.  NMMCC may "sue and be sued in all actions arising out of any act or omission in connection with its business or affairs." § 52-9-15(C) NMSA 1978 (2003 Repl.).  The Legislature enacted that statute after the Tort Claims Act.  NMMCC is therefore not immune from the Plaintiffs' tort claims, and the Court will deny NMMCC's motion to dismiss the Counts V and VIII of the Complaint.

**B.    THE NEW MEXICO STATUTE GOVERNING CONTRACT ACTIONS AGAINST GOVERNMENTAL ENTITIES DOES NOT PROVIDE A BASIS FOR IMMUNITY.**

NMMCC also argues that it is immune from the Plaintiffs' contract claims pursuant to a New Mexico statute which provides that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."  § 37-1-23 NMSA 1978 (1990 Repl.). Section 37-1-23 does not contain its own definition of "governmental entity."   NMMCC has not presented the Court with authority to suggest that it should apply a definition different from the one set forth in the New Mexico Tort Claims Act.  As discussed above, the Court does not believe that NMMCC meets that definition.  Accordingly, § 37-1-23 does not apply to NMMCC.

Furthermore, § 52-9-15, which states that NMMCC may "sue and be sued in all actions arising out of any act or omission in connection with its business or affairs," supports the conclusion that the New Mexico Legislature did not intend to grant NMMCC immunity from actions based on unwritten contracts.  Thus, New Mexico law defining implied contracts, including its common law, applies to the Plaintiffs' contract claims without regard to whether the contract is written.

Even if the Court were to conclude that § 37-1-23 applies, the Complaint contains sufficient allegations of a valid written contract to survive a motion to dismiss under rule 12(b)(6).  The

Plaintiffs rely upon a contract that does not include volume-based compensation provisions and that NMMCC entered into with them after the disapproval of the 2000 contracts. Assuming, as the Court must at this stage of the case, the Plaintiffs' allegations to be true, there are sufficient allegations to find that the Plaintiffs' contract claims are based upon a valid written contract.

The Court has already rejected the written contracts including the volume-based provision. The Court has also foreclosed any implied, unwritten contract against NMMCC containing volume-based compensation provisions.  There may, however, remain a written contract that does not include the volume-based provision.  Accordingly, the Court does not believe that § 37-1-23 bars the Plaintiffs' contract claims against NMMCC.

**IT IS ORDERED** that the NMMCC Defendants' Second Motion to Dismiss is denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Mary Y.C. Han
Paul J. Kennedy
Adam Baker
Kennedy & Han, P.C.
Albuquerque, New Mexico

     *Attorneys for the Plaintiffs*


Geoffrey D. Rieder
Travis G. Jackson
Maestas, Rieder & Suggert, P.C.
Albuquerque, New Mexico

– and –

John Wentworth
Jerry Todd Wertheim
Jones, Snead, Wertheim & Wentworth, P.A.
Santa Fe, New Mexico

     *Attorneys for Defendants New Mexico New Mexico Mutual Casualty Company,*
     *Johnny Suarez, Paul Cannizarro, Deborah Payne, Karen Alarid, Raymond Perovich,*
     *Ted Knight, Bill Garcia, Fabian Chavez, Charles Duke Colkett, Ron Moshel, and*
     *Brian Stokes*


John B. Pound
Herrera, Long, Pound & Komer, P.A.
Santa Fe, New Mexico

     *Attorneys for Defendants Eric Serna and Nestor Romero*